## Case No. 11,074.

### PHELPS v. CLASEN.

[Woolw. 204;[1] 3 N. B. R. 87 (Quarto, 22) 2 West. Jur. 221.]

Circuit Court, D. Minnesota. June Term, 1868.

OF THE ISSUE IN INVOLUNTARY BANKRUPTCY. How IT IS JOINED, AND HOW IT IS TRIED—THE STATUTE OF FRAUDS, AND PAYMENT OF ANOTHER'S DEBT—OF BECOMING PARTIES TO AGREEMENTS—OF PAROL PROOF TO EXPLAIN WRITTEN AGREEMENT, AND ITS ADMISSIBILITY UNDER THE STATUTE.

1. It is doubtful if any answer be necessary in proceedings in involuntary bankruptcy to a rule upon a debtor to show cause why he should not be declared a bankrupt.

2. A paper simply denying the acts of bankruptcy charged, and demanding a trial by jury, is a proper response on the part of a debtor to such rule.

[Cited in Re Heydette, Case No. 6,444.]

3. On such trial, the petitioning creditor, it seems, need not make proof of his debt.

4. The petition in involuntary bankruptcy may be filed by any creditor whose debt is provable under the act.

[Cited in Re Dennery, 89 Cal. 105, 26 Pac. 639.]

5. Any debt existing at the time of the adjudication, although not then due and payable, is provable under the act [of 1867 (14 Stat. 517)].

6. A promise founded on a new consideration, made to one who owes a third party, to pay the debt, is not within the statute of frauds.

7. Persons who signed a paper reciting a contract between them, naming them as the contracting parties, and referring to their intentions in separate clauses, are bound by the obligations thereby imposed, and are entitled to the rights thereby conferred, whether they understood themselves as signing as witnesses or as parties.

8. Parol proof may be received of the consideration of an instrument, different from the one recited in it, as well when it is signed by both parties, as when it is signed by only one.

9. Parol proof is inadmissible to contradict or vary the terms of a written instrument, in which the parties have expressed a clear meaning.

10. Nor is parol evidence admissible to show what the meaning of the parties was, when the terms of the instrument, in the light of all the circumstances, remain unintelligible.

11. But when the instrument does not suggest what the meaning of the parties was, and when the language is susceptible of more than one meaning, and it is uncertain which is the proper construction, parol testimony is admissible of all the circumstances, showing the relation of the parties, their knowledge of the subject matter of the contract, and the state or condition thereof, and of all other facts which shed any light on their intention or meaning.

[1] [Reported by James M. Woolworth, Esq., and here reprinted by permission.]

12. A partner selling his interest in the firm property to his co-partner and a third party, gave a writing containing the following clause: "And it is further understood by the parties of the second part (i. e., the vendees), that the above sale is made subject to any indebtedness made by the purchase of any of the before mentioned goods, wares, and merchandise, by Jennings & Phelps, and Phelps & Clasen, for which reference is made to an account of liability on the 1st day of April, 1867." *Held*, as the clause did not import a promise on the part of the vendees to pay those debts, proof of extrinsic facts was admissible, viz., whether or not there were liens on the property, and what was the value of the property; and that the clause means that the vendees take the goods charged by this contract with a liability to pay, out of their proceeds, the debts mentioned.

This was a writ of error to the district court. Phelps filed his petition in involuntary bankruptcy against Charles L. Clasen and A. B. Clasen, merchants, doing business under the firm name of A. B. & C. L. Clasen, for reasons not necessary to be here stated. The register having issued the usual order requiring them, at a day therein named, to appear before him, and show cause why they should not be declared bankrupts, according to the act, they, at the time appointed, filed before and with him a paper, informal in its character, but distinctly denying that they had been guilty of the acts of bankruptcy charged, and demanding a trial by jury. The matter being adjourned into court, a trial was had before the district judge and jury. On the trial, Phelps, the petitioning creditor, was introduced as a witness, and testified that he had formerly been a partner in the firms Jennings & Phelps, and Phelps & Clasen,—the latter being successor to the former, and composed of himself and A. B. Clasen; that on the 1st day of April, 1867, he sold his interest in the latter firm to these debtors. He was then shown an instrument in writing, which he said was a bill of sale from himself to them; and that the goods in the store were delivered to them in pursuance of it. This paper was as follows:

"Know all men by these presents, that I, A. I. Phelps, town of Cannon Falls, county of Goodhue, state of Minnesota, of the first part, for and in consideration of nine hundred and nine dollars and ninety cents ($909.-90) in lawful currency of the United States, to me in hand paid, at or before the ensealing of these presents, by A. B. & C. L. Clasen, of the same place, parties of the second part, the receipt whereof is hereby acknowledged, have bargained and sold, and by these presents do grant and convey, unto the said parties of the second part, their executors, administrators, and assigns, the one equal and undivided one-half interest in the goods, wares, and merchandise, debts due, and demands of whatsoever nature or name owned by and due the firm of Phelps & Clasen, as merchants in said town of Cannon Falls. And it is further understood by the parties of the second part, that the above sale is made, subject to any indebtedness made by the purchase of any of before mentioned goods, wares, and merchandise, by Jennings & Phelps, and Phelps & Clasen, for which reference is made to an account of liabilities on the 1st day of April, 1867. To have and to hold the herein described property, to the said A. B. & C. L. Clasen, their heirs and assigns for ever. In testimony whereof, I have hereunto set my hand and seal this 1st day of April, 1867.    A. I. Phelps.    (Seal.)

"Signed, sealed, and delivered in presence of Charles L. Clasen. A. B. Clasen.

"(Five cent revenue stamp cancelled.)"

Counsel for the plaintiff then proposed to prove by the witness, that the defendants, in consideration of said sale, verbally promised that they would pay all the debts then owing by the two firms of Jennings & Phelps, and Phelps & Clasen, and that they had failed to do this, in consequence of which plaintiff had been compelled to pay said debts to the amount of $2061.37; and asked witness several questions tending to show those facts. All these questions were objected to by defendants' counsel, and the objections sustained by the court, on the ground that the paper called a bill of sale was the sole evidence of the contract between the parties, and could not be contradicted or varied by oral testimony. After the examination was closed, the court instructed the jury, that there was no evidence to sustain the issue on the part of the petitioning creditor, and that they must find for the defendants, which they did.

Phelps & Wilder, for creditor.
Smith & Gilman, for debtor.

MILLER, Circuit Justice. The creditor complains here against the action of the district court, in the first place, because the motion which, before the trial was entered upon, he made, to have the debtors declared bankrupts, as if in default for want of an answer, was overruled.

There is no formal answer to the petition of the creditor, and it is extremely doubtful if any answer is necessary. Section 40 of the bankrupt act (14 Stat. 517) directs, that on the filing of the petition, a rule shall issue to the defendant to show cause why he should not be declared a bankrupt. The response to this rule is not necessarily to be made by answer to the petition.

The next section requires, that on the return day of this rule, the court "shall proceed summarily to hear the allegations of the petitioner and the debtor;" and if at that time the debtor shall demand a jury in writing, the court shall order a trial by jury at the first term on which a jury shall be in attendance, "to ascertain the fact of said alleged bankruptcy." In this case the debtor did file a written paper at the proper time, denying the acts of bankruptcy charged, and demanding a trial by jury.

I am of opinion that this paper presents a

proper response to this rule to show cause, and entitled the defendants to a jury trial. There was, therefore, no error in overruling the motion of the petitioner.

On the trial before the jury, the question was raised, whether, in a proceeding of this nature, the petitioner must not, on the trial, and to the satisfaction of the jury, establish the existence of a debt due and payable to him from the debtors.

Looking to the language of the act, which seems to confine the inquiry "to the fact of said alleged bankruptcy," it may well be doubted whether this fact might not exist, and be found by the verdict, without regard to the further and distinct inquiry whether the petitioner had established, or had a debt provable, under the act. This view seems to be supported by the further provision of another time and another mode of procedure for that particular inquiry. See sections 22–24. If the debtor intended to deny that he owed the petitioning creditor debts to the amount of $200, he could have raised that question before going to the jury on the alleged acts of bankruptcy. If the question were found for him, the further inquiry would be unnecessary, and the expense and delay of it would be avoided. But as this question was not distinctly made in the district court, and is not mentioned in the briefs of counsel, it is not decided here.

It is also contended, that because the plaintiff had not, at the time the principal act of bankruptcy is alleged to have been committed, paid the debt to the creditors of the firm of Phelps & Clasen, which the defendants assumed, he was not such a creditor as could file this petition against them. Any creditor, whose debt is provable under the act, is authorized to file a petition for the involuntary bankruptcy of his debtor. See section 39. And section 19 provides, that debts which had been incurred and were existing at the time of the adjudication of bankruptcy, whether due and payable at that time, or not due till a future day, are provable under the act. To entitle himself to this remedy, then, it was not necessary for the plaintiff to have made the payment of the debt to the firm. If his demand was a valid one, it was sufficient to support this proceeding.

It is also insisted that this testimony must be excluded, because, being a promise to pay the debt of another, the undertaking is within the statute of frauds. But this is a promise to the plaintiff, founded on a new consideration, to pay a debt which he owed to a third party. Such a promise is not within the statute.

The counsel for the plaintiff insists that the paper which is called a bill of sale is an ex parte instrument of the plaintiff, the main purpose of which was to transfer his interest in the partnership of Phelps & Clasen; that the defendants signed it as witnesses, and not as parties, and that consequently parol proof of their verbal promise to pay the debts of the firm is not excluded by the recital in the instrument of a money consideration. The counsel for the defendants, on the other hand, maintain that the paper is a deed signed by both parties, and that no other contract or promise on the part of the defendants than what is found in the instrument can be proven.

On this point I lay out of view the sworn statement of the plaintiff, that the defendants signed as witnesses merely, and not as parties. I am of opinion that inasmuch as the paper recites a contract between these two parties, naming them as such, refers in separate clauses to their intention, and shows their signatures attached, it is immaterial whether they signed as parties or as witnesses. In either case, they are shown to have made the contract which is set forth in the paper, and are bound by all the obligations which it may establish against them, and are entitled to all the rights which it confers.

It is true that nearly all the cases in which it has been decided that parol proof may be received, of a consideration different from that recited in the instrument, are where but one of the two contracting parties signed it. But the principle is not limited to that class of cases. On the contrary, in De Wolf v. Rabaud, 1 Pet. [26 U. S.] 476, Sweet v. Lee, 3 Man. & G. 452, and Clifford v. Turrell, 1 Younge & C. Ch. 138, among the many which could be cited, the instrument was signed by both parties, and parol proof was admitted to sustain a cause of action founded on a consideration which was not mentioned, and was entirely different from the one which was mentioned in the instrument.

The doctrine may therefore be taken as established, that where it does not appear that the intention of the parties was to state in the instrument all the consideration passing between them, the circumstance of its being signed by both of them does not exclude parol proof of a consideration additional to and different from the one which is recited. If, therefore, no other reference in the bill of sale were made to the consideration for which the plaintiff conveyed his interest in the old firm to the defendants, than the recital of the $900, I should have no hesitation in admitting the parol proof offered by the plaintiff.

But I am satisfied that the second clause in this instrument was by the parties intended to be a statement of their agreement in regard to the very matter which he desired to prove by parol. I take it that these rules of evidence are well settled:

1. Where parties have attempted to put their agreement in writing, and have upon any particular subject expressed any clear meaning, parol evidence is inadmissible to contradict or vary that meaning.

2. When the terms of the instrument, in the light of all the circumstances, do not convey a clear meaning, but remain unintel-

ligible, parol evidence is inadmissible to show what the meaning of the parties was.

3. When the instrument does not suggest what the meaning of the parties was, and when the language is susceptible of more than one meaning, and it is uncertain which is the proper construction, parol testimony is admissible to show all the circumstances, such as the relations of the parties, their knowledge of the subject matter of the contract, the state and condition thereof, and all other facts which shed any light on their intention or meaning. [Bradley v. Steam-Packet Co., 13 Pet. [38 U. S.] 89; Mauran v. Bullus, 16 Pet. [41 U. S.] 528; De Wolf v. Rabaud, 1 Pet. [26 U. S.] 476; Blossom v. Griffin, 3 Kern. (13 N. Y.) 569.] [2]

Upon these principles we proceed to examine this instrument. The particular clause upon which the question arises reads thus: "And it is further understood by the parties of the second part, that the above sale is made subject to any indebtedness made by the purchase of any of the before mentioned goods, wares, and merchandise, by Jennings & Phelps and Phelps & Clasen, for which reference is made to an account of liabilities on the 1st day of April, 1867."

The counsel for the plaintiff insists that this clause means that the vendees in that sale were to pay debts which the two firms had contracted for the merchandise which was the subject of the sale, and which debts were set forth in a list made on the 1st of April. But the clause, considered by itself, does not contain or express any promise by the vendees to pay those debts. If they did so undertake, their obligation in that behalf will appear only by a reference to the whole instrument and to certain extrinsic facts connected with the transaction, which must be shown by parol testimony.

The counsel for the defendants contend that the intention of the parties was, that in the sale the vendees took the goods subject to any lien thereon by way of mortgage or otherwise, existing at the time of the sale, for debts contracted in their original purchase. And they insist that if such is not the meaning, then the clause is unintelligible, and within the rule secondly above laid down.

The clause does not by its terms convey such meaning. No lien on the goods is mentioned. The law does not give a lien for goods sold and delivered, so that there is no implication that the goods were, by reason of the original purchase, charged with a lien. The sale is said to be made subject to any indebtedness contracted for the purchase of these goods, and not merely to such indebtedness as might be a lien on them. The debts referred to are to be found in an account of the liabilities of the firm, of the same date as the instrument which we are construing. A reference to this account is

necessary to show what indebtedness is meant. The construction claimed by the counsel for the defendant would not be unreasonable if, to secure debts of the class described, there were specific liens by way of mortgage or otherwise. On the other hand, that construction would be unreasonable if there were no such liens, and the parties contracting both knew it. In order to an understanding of the meaning of the parties, it was material to know, therefore, whether there were such liens or not. And this could be shown only by parol testimony. This fact related to the condition of the property which was the subject of the sale, and must have been well known to both the contracting parties. Parol testimony to show it comes within all the decisions, as proper to elucidate the meaning of the language used in the instrument. But the question being propounded to the witness, he answered that there were no such liens. The court held it inadmissible, and ruled it from the jury. This clearly was error.

We are next to consider whether, from all the circumstances attending the parties and the matters about which they were contracting, and from the other parts of the instrument, we can deduce for this clause a reasonable and sensible meaning.

The plaintiff and one of the defendants were partners in the goods. These parties were jointly indebted on account of the purchase by them of these goods. It was in reference to this stock of goods and these debts that the plaintiff and these defendants were contracting. It was provided that the sale was made subject to any indebtedness made by the purchase of the goods. What was subjected to the indebtedness? What was to be the effect of subjecting this (whatever it was) to the indebtedness?

The subject matter of the sale was all of the plaintiff's interest in the property of the partnership. This appears from the instrument itself. The value of that interest does not appear in any part of the paper. But that is a circumstance which, if it can throw light on any clause in the instrument, can be proved by parol, inasmuch as it does not contradict nor vary its terms. The defendants claim that the $909 mentioned in the bill of sale was the only consideration which they paid, or agreed to pay, for the interest of the plaintiff. He claims that the assumption of the indebtedness contracted by the old firm in the purchase by it of the property, formed a large part of the consideration. If the interest sold by the plaintiff to the defendants was, as the former claims, worth $3,000, and this can be proven, it is unreasonable to suppose that he sold it for only $909. If the defendants gave the fair value of the interest for it, what more reasonable than that the difference above $900 was made up by assuming the debts for which the vendor was liable.

Now, in the light of all these circumstan-

---

[2] [From 3 N. B. R. 87 (Quarto, 22).]

ces, what is meant by "the sale being made subject to the liabilities of the two firms of Jennings & Phelps, and Phelps & Clasen"? Without further verbal criticism, I may say, that if it were necessary in order to sustain the plaintiff's claim, I would hold that it means a promise on the part of the defendants to pay all such debts of the two firms as were created by the purchase of any of the goods conveyed by the bill of sale, and which should be found in account of liabilities taken on the 1st of April, 1867.

But it is not necessary to go quite so far. It is sufficient to interpret the clause to mean, that the defendants take the goods charged in their hands by that contract, with a liability to pay the debts mentioned out of those goods; and that for this appropriation of the proceeds of the goods, as far as was necessary, the defendants are liable to the plaintiff. This, I think, is consistent with all the circumstances of the transaction, and with the language of the contract, and is a fair and reasonable construction of it.

The defendants having disposed of the goods without applying them to this purpose, and having committed the acts of fraud and bankruptcy charged in the petition, so that the plaintiff was compelled to pay those debts, he had a right of action for the amount so paid by him.

These views of the introduction of parol testimony are well sustained, in addition to the authorities already cited, by the note of Prof. Parsons, at page 555, volume 2, 5th edition of his work on Contracts, where he gives a philosophical statement of some of the principles concerning the admissibility of parol testimony to affect written contracts.

The judgment of the district court is therefore reversed, and the case remanded to that court, with directions to set aside the verdict, and grant a new trial in consonance with this opinion.

Judgment reversed, and cause remanded for new trial.

NOTE. As to the proper answer to a rule to show cause why respondent should not be adjudged bankrupt, see In re Sunderland [Case No. 13,639], if petition indefinite; if insufficient in law, In re Melick [Id. 9,399]; In re Gebhardt, [Id. 5,294]. Demand for jury trial must be filed on return day, In re McNaughten [Id. 8,912]; In re Sherry, 8 N. B. R. 142; In re Hawkeye Smelting Co., Id. 385. When need be sworn to, In re Findlay [Case No. 4,789]. The debt of the petitioning creditor need not be due. It is sufficient that it is a debt provable in bankruptcy. Linn v. Smith [Id. 8,375]; In re Ouimette [Id. 10,622]. The debt must exist at the time of filing the petition. Where a petition was founded on a debt due by a minor, and he failed to affirm the debt, previous to filing the petition against him, held, the adjudication was void. In re Derby [Id. 3,815].[3]